**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

RECEIVED

2021 MAR 10  P 12: 38

DEBRA
U.S. DISTRICT
MIDDLE DISTRICT

THE STATE OF ALABAMA; ROBERT
ADERHOLT, Representative for Alabama's
4th Congressional District, in his official and
individual capacities; WILLIAM GREEN;
and CAMARAN WILLIAMS,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
COMMERCE; GINA RAIMONDO, in her
official capacity as Secretary of Commerce;
UNITED STATES BUREAU OF THE
CENSUS, an agency within the United States
Department of Commerce; and RON
JARMIN, in his official capacity as Acting
Director of the U.S. Census Bureau,

Defendants.

CIVIL ACTION NO.  3:21-cv-211-RAH
_____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR REQUEST
FOR THE APPOINTMENT OF A THREE-JUDGE COURT**

Pursuant to Section 209 of Public Law No. 105-119 and 28 U.S.C. § 2284(a), Plaintiffs request that this Court convene a three-judge court to consider Plaintiffs' claims regarding (1) the Census Bureau's implementation of "differential privacy," an unlawful statistical method that alters the population counts used for redistricting; and (2) the Census Bureau's decision to deliberately delay delivery of redistricting data to the States past the statutorily mandated deadline. In accordance with this Court's Local Rule 9.3(a), Plaintiffs attach to their Complaint this brief statement setting forth the basis for this request.

## BACKGROUND

Plaintiffs the State of Alabama, Representative Robert Aderholt, and Alabama voters William Green and Camaran Williams have initiated this lawsuit against Defendants the Department of Commerce, the Secretary of Commerce, the Census Bureau, and the Bureau's Acting Director. The suit challenges two unlawful actions by the Commerce Department and Census Bureau in relation to the 2020 decennial census: First, Defendants' decision to produce skewed redistricting data to the States via an unlawful statistical method—differential privacy—never before used in the decennial census; and second, Defendants' refusal to produce redistricting data by the statutorily prescribed deadline.

**I.     The Census Bureau Is Implementing Differential Privacy, An Unlawful Statistical Method.**

The Secretary, through the Census Bureau, has announced that she will provide the States purposefully flawed redistricting data via a statistical method called differential privacy. Differential privacy is a "formal privacy" method that "inject[s] a precisely calibrated amount of noise"—random error—"into the data to control the privacy risk of any calculation or statistic." Michael Hawes, U.S. Census Bureau, *Title 13, Differential Privacy, and the 2020 Decennial*

1

*Census* 22 (Nov. 13, 2019), https://perma.cc/MRQ2-67WG; *see also* JASON, *Formal Privacy Methods for the 2020 Census* (Apr. 2020), https://perma.cc/G8ZM-YNN6.

"[T]he goal of differential privacy is to obscure the presence or absence of any individual, or small group of individuals," from the dataset. *See* Cynthia Dwork, *Differential Privacy: A Cryptographic Approach to Private Data Analysis*, *in* PRIVACY, BIG DATA AND THE PUBLIC GOOD 302-03 (Julia Lane et al., eds., 2014). To accomplish this goal, the accuracy of the data is intentionally skewed by statistical formulae to reduce the risk of re-identification of the true responses. But as explained in Plaintiffs' Complaint, States like Alabama and its individual Plaintiffs are entitled to accurate "[t]abulations of population" for purposes of "legislative apportionment or districting of such State." 13 U.S.C. § 141(c).  Because the Bureau is implementing differential privacy, Alabama and its individual Plaintiffs' statutory right to accurate "[t]abulations of population" for redistricting will be violated, and the State will be forced to redistrict using inaccurate census results that intentionally count people in the wrong place.

Inaccurate redistricting data will harm Plaintiffs in other ways as well.  Alabama has obvious sovereign interests in receiving accurate redistricting data so it can ensure its residents are fairly represented and that the State receives its fair share of federal funding tied to census data. *See* Pl. Compl. ¶¶ 133-58. Relatedly, Alabama's residents face a substantial risk that their votes will be diluted as a result of the inaccuracies Defendants will add to the redistricting data. *See id.* ¶¶ 159-64.

## II.    The Census Bureau Announced It Would Deliberately Deliver Census Data Well Past The Statutory Deadline, Defying Federal Law.

On February 12, 2021, the Census Bureau announced it "will deliver" the "redistricting data" on September 30, 2021. *See Press Release: Census Bureau Statement on Redistricting Data Timeline*, U.S. Census Bureau (Feb. 12, 2021), https://perma.cc/F8RB-CN6Y; James Whitehorne,

2

*Census Bureau Statement on Redistricting Data Timeline*, U.S. Census Bureau (Feb. 12, 2021), https://perma.cc/A2SZ-7L5Q. But Congress has required the Bureau to deliver redistricting data by no later than March 31, 2021. *See* 13 U.S.C. § 141(c). The Bureau, of course, lacks the authority to unilaterally amend—let alone defy—federal law dictating its legal obligations.

Nevertheless, the Bureau decided to deprive Alabama of information to which it is statutorily entitled under federal law. *See* 13 U.S.C. § 141(c). The Census Bureau's February 12 Decision hamstrings Alabama's ability to meet its constitutional obligations and to run its 2022 statewide elections effectively or in accordance with State law, and thus irreparably harms the State and its residents, including the individual Plaintiffs. *See* Pl. Compl. ¶¶ 186-94. The delay will also harm Representative Aderholt by, among other things, giving him less time to campaign for reelection in a newly drawn district. *See id.* ¶¶ 195-97.

## ARGUMENT

Section 2284 states that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). In section 141 of title 13 ("Section 141"), Congress codified the redistricting-data deadlines at issue in this case. 13 U.S.C. § 141(c). Section 209 of Public Law No. 105-119 ("Section 209"), styled "13 USCA 141 note," provides a cause of action for "[a]ny person aggrieved by the use of any statistical method in violation of the Constitution or any provision of law ... to determine the population for purposes of the apportionment or redistricting of Members in Congress," allowing such "aggrieved" parties to "obtain declaratory, injunctive, and any other appropriate relief against the use of such method." Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119 § 209(b), 111 Stat. 2440 (codified at 13 U.S.C. § 141 note). Congress additionally provided that such an

3

action "shall be heard and determined by a district court of three judges in accordance with section 2284 of title 28, United States Code." *Id.* § 209(e)(1).

In this case, each Plaintiff is an "aggrieved person" under Section 209, and both the differential-privacy and delay claims implicate the "use of any statistical method in violation of the Constitution or any provision of law ... to determine the population for purposes of ... redistricting." *Id.* § 209(b). The case thus falls within Section 209. Because "a district court of three judges" is "required by Act of Congress"—here, Section 209—a three-judge court "shall be convened" to adjudicate these claims. 28 U.S.C. § 2284.

## I.    Plaintiffs' Claims Challenging Differential Privacy Require A Three-Judge Panel.

Defendants are implementing an unlawful statistical method in their production of the 2020 decennial census redistricting data, which is precisely the sort of wrongdoing Congress sought to eliminate through Section 209. Additionally, the statute confers upon each Plaintiff in this case a right to challenge Defendants' actions. Pub. L. No. 105-119 § 209(d). Plaintiffs' differential-privacy claims thus fit squarely within Section 209, and accordingly require a three-judge panel. *Id.* § 209(e)(1).

As a threshold matter, differential privacy plainly constitutes a "statistical method" under Section 209. The statute defines "statistical method" as "an activity related to the design, planning, testing, or implementation of the use of representative sampling, or any other statistical procedure, including statistical adjustment, to add or subtract counts to or from the enumeration of the population as a result of statistical inference." *Id.* § 209(h)(1). As noted above and further described in Part III of Plaintiffs' Complaint, differential privacy is a statistical method that "inject[s] a precisely calibrated amount of noise"—i.e., intentional error—"into the data to control the privacy

4

risk of any calculation or statistic."[1] Privacy is the result of statistical manipulation of the true numbers—"perfect privacy would result in completely useless data," while "perfect accuracy would result in releasing the data in fully identifiable form."[2] In short, the statistical method skews the results to make it more difficult to identify any given respondent in a dataset.

Additionally, each Plaintiff is an "aggrieved person" as contemplated in Section 209. *Id.* § 209(d). The statute considers an "aggrieved person ... [to] *include*[]": "(1) any resident of a State whose congressional representation or district could be changed as a result of the use of a statistical method challenged in the civil action; (2) any Representative or Senator in Congress; and (3) either House of Congress." *Id.* (emphasis added). Section 209(d)(1) thus squarely confers rights of action on Messrs. Green and Williams, and, covering "any Representative," subsection (d)(2) expressly applies to Representative Aderholt in his official capacity as well.

Though not expressly named in the statute, the State of Alabama also constitutes an "aggrieved person" under Section 209. First, the statute's text indicates the enumerated list of "aggrieved person[s]" is not exhaustive. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132-33 (2012) (collecting cases showing "[t]he verb *to include* introduces examples, not an exhaustive list"); *see also Federal Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). Which non-enumerated parties fall within the scope of Section 209(d) then turns primarily on the statute's natural reading. *See, e.g., United States v. Probel*, 214 F.3d 1285, 1288 (11th Cir. 2000) (reasoning statutory definition

---

[1] Michael Hawes, U.S. Census Bureau, *Title 13, Differential Privacy, and the 2020 Decennial Census* 22 (Nov. 13, 2019), https://perma.cc/MRQ2-67WG; *see also* JASON, *Formal Privacy Methods for the 2020 Census* (Apr. 2020), https://perma.cc/G8ZM-YNN6.

[2] Hawes, *Title 13, Differential Privacy, and the 2020 Decennial Census*, *supra*, at 22 (cleaned up).

5

incomplete "[b]ecause the term 'includes' is not exhaustive," thus requiring court to analyze statute's "most natural reading").

The statute's natural reading includes the States alongside Section 209(d)'s enumerated parties. In Section 141, Congress guaranteed that the Bureau would provide timely and accurate "[t]abulations of population" to the *States* for use in their redistricting processes. *See* 13 U.S.C. § 141(a)-(c). Congress reemphasized its focus on States in its "13 USCA 141 note," where it explicitly found that "the decennial enumeration of the population is one of the most critical constitutional functions our Federal Government performs" and voiced concern that, "if such enumeration is conducted in a manner that does not comply with the requirements of the Constitution or laws of the United States, it would be impracticable *for the States* to obtain … meaningful relief after such enumeration has been conducted." Pub. L. 105-119 § 209(a)(5), (8) (emphasis added). The harms for which Congress recognized a right of action in Section 209 are therefore harms flowing from the Bureau's abrogation of its statutory duty to the States under Section 141; that is, the grievances of three groups listed in Section 209(d) derive from the Bureau's initial harm to Alabama. Alabama's harms, in turn, can be no less actionable than the downstream harms Congress highlighted in Section 209.

Indeed, providing a right of action to parties whose harms derive from one entity's initial harm and simultaneously denying that entity a similar right to redress would frustrate Congress's intent. Courts facing similar circumstances frequently hold that a statute's defined term may expand to include government entities—such as sovereign States—where a contrary interpretation would contravene the statute's purpose. *See, e.g., Georgia v. Evans*, 316 U.S. 159, 162 (1942) ("Nothing in the [Sherman] Act, its history, or its policy, could justify so restrictive a construction of the word 'person' … as to exclude a State" where "[s]uch a construction would deny all redress

6

to a State ... merely because it is a State."); *United States v. Ekanem*, 383 F.3d 40, 44 (2d Cir.

2004) (concluding "interpretation of the term 'victim' under the MVRA to include the Govern-

ment, as in the VWPA, is consistent with the intent and purpose of the MVRA to expand, rather

than limit, the restitution remedy"); *United States v. Schmidt*, 675 F.3d 1164, 1169-70 (8th Cir.

2012) (holding that, despite "the definition of 'person' in 1 U.S.C. § 1 ... not expressly includ[ing]

sovereign states or government entities," "[a] government agency may qualify as a 'person'").[3]

As Plaintiffs' Complaint explains in greater detail, differential privacy is unnecessary, un-

lawful, and harms Plaintiffs. *See* Pl. Compl. ¶¶ 79-164. Thus, because the Bureau is implementing

a "statistical method in violation of the Constitution or any provision of law ... to determine the

population for purposes of the apportionment or redistricting of Members in Congress," and, be-

cause all Plaintiffs constitute "aggrieved persons" within the meaning of the statute, Plaintiffs'

action "shall be heard and determined by a district court of three judges in accordance with section

2284 of title 28, United States Code." *Id.* § 209(b), (e)(1).

## II.     Plaintiffs' Claims Challenging the Bureau's Deliberate Delay Also Require a Three-Judge Panel.

Plaintiffs also challenge the Bureau's February 12 Decision to unilaterally defy its statutory

obligations and delay redistricting-data delivery to the States. This delay is unlawful and undoubt-

edly harms the State of Alabama and Rep. Aderholt, preventing the State from meeting its consti-

tutional obligations and jeopardizing both the State and Rep. Aderholt's interests in the 2022

---

[3] To the extent the Court holds Section 209 does not confer a right of action upon Plaintiff the State of Alabama, a three-judge court will nevertheless have pendent party jurisdiction over Alabama because its claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also id.* ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("[Section] 1367(a) is a broad jurisdictional grant, with no distinction drawn between pendent-claim and pendent-party cases. In fact, the last sentence of § 1367(a) makes clear that the provision grants supplemental jurisdiction over claims involving joinder or intervention of additional parties.").

elections. *See* Pl. Compl. ¶¶ 165-97. As explained in the preceding section, both Rep. Aderholt

and the State of Alabama are "aggrieved person[s]" under Section 209. *See* Pub. L. No. 105-119

§ 209(d). Because the Bureau's delay is a byproduct of its attempt to implement an unlawful sta-

tistical method—that is, differential privacy—Plaintiffs' delay-related claims, like their differen-

tial-privacy claims, fall within Section 209's scope and duly require a three-judge court. *See id.* §

209(e)(1).

Section 209 broadly applies to "[a]ny person aggrieved by the use of any statistical method

in violation of the Constitution or any provision of law," *id.* § 209(b), and leaves open the sorts of

harms that could "aggrieve" a plaintiff. Because "use of any statistical method in violation of the

Constitution or any provision of law" represents a threat to "one of the most critical constitutional

functions our Federal Government performs," *see id.* §§ 209(a)(5), (b), any harm related to unlaw-

ful statistical methods will "aggrieve" a plaintiff within the meaning of Section 209. Indeed, Con-

gress recognized that a bevy of harmful eventualities could result from such malfeasance, explain-

ing "statistical adjustment in conjunction with an actual enumeration to carry out the census poses

the risk of an *inaccurate, invalid, and unconstitutional census.*" *Id.* § 209(a)(7) (emphasis added).

Here, the Bureau's unlawful decision to deliberately delay delivery of redistricting data to

the States is likely a byproduct of its unwarranted decision to implement differential privacy. In-

deed, considering the Bureau normally releases the redistricting data within three months of the

statewide-population totals, the Bureau's decision to apply a never-before-used statistical method

to reconfigure nationwide datasets likely contributed to the Bureau's decision to give itself five

months to carry out that task this time. Further illustrating that differential privacy is at least one

significant cause for the delay, the Bureau recently announced it would "release the next [Privacy-

Protected Microdata Files (PPMFs)]"—a differential-privacy testing product—"and Detailed

8

Summary Metrics no later than April 30, 2021." *See* U.S. Census Bureau, 2020 Disclosure Avoidance System Updates (Feb. 23, 2021), https://perma.cc/D6VJ-N5Z3. In the same press release, the Bureau provided a schedule of future PPMF rollouts, which it has scheduled to conclude just before its self-imposed September 30 data-delivery deadline. *Id.* The Bureau thus plans to continue testing differential privacy's efficacy and useability well into the final days before it delivers redistricting data to the States, in turn indicating that differential privacy contributes to Bureau's delay.

Differential privacy constitutes an inherent harm in itself, but the immediate effects of the Bureau's decision to implement this unlawful statistical method represent additional harms caused "by the use of any statistical method in violation of the Constitution or any provision of law." Pub. L. 105-119 § 209(b). Defendants' unjustifiable six-month delay in conveying redistricting data to the States is just such a harm. Like their differential-privacy claims, Defendants' delay claims thus fall within the scope of Section 209 and, accordingly, "shall be heard and determined by a district court of three judges." *Id.* § 209(e)(1).

## III.   Even If The Court Holds That Only Plaintiffs' Differential-Privacy Claims Require A Three-Judge Court, The Panel Should Exercise Pendent Jurisdiction Over Plaintiffs' Claims Challenging The Bureau's Deliberate Delay.

Section 209 requires that a three-judge court hear Plaintiffs' differential-privacy and delay claims. Pub. L. No. 105-119 § 209(e)(1).  If the Court nevertheless determines that only Plaintiffs' differential-privacy claims require a three-judge panel, that panel may—and should—exercise pendent jurisdiction over Plaintiffs' delay claims as well.

Pendent jurisdiction in a three-judge court works much the same way it does for a single-judge court: "[I]n cases involving a claim that must be heard by a three-judge court, that court 'has power to decide other claims in the case that, standing alone, would require only a single judge.'" *Ted Cruz for Senate v. Fed. Election Comm'n*, No. 19-CV_908, 2019 WL 8272774, at *9 (D.D.C.

9

Dec. 24, 2019); *accord, e.g., Castañon v. United States*, F. Supp. 3d 118, 128 (D.D.C. 2020) ("The

Supreme Court has made clear that a properly convened three-judge district court has some ability

to exercise a brand of supplemental jurisdiction over claims beyond those that form the core of its

statutory jurisdictional grant."). So "if any part of this case should be before a three-judge court,

the three-judge court would be able to hear the whole case under a theory of pend[e]nt jurisdic-

tion." *Arizona v. Holder*, 839 F. Supp. 2d 36, 39 (D.D.C. 2012); *see also, e.g., Weintraub v. Han-

rahan*, 435 F.2d 461, 463 (7th Cir. 1970) ("[W]here there is a significant and substantial interrela-

tionship between the allegations of the complaint forming the basis for the cause of action, the

entire case on the theory of pendent jurisdiction should go to the three-judge court for the deter-

mination of which issues to hear.").

Where a three-judge panel may exercise supplemental jurisdiction, it should do so where

ancillary claims "[bear] an intimate relation to those that impelled the formation of a three-judge

district court in the first instance." *Castañon*, 444 F. Supp. 3d at 128 (collecting cases). "In other

words, the propriety of supplemental jurisdiction in three-judge district court cases turns on many

of the same considerations that are present in every case involving a question of pendent jurisdic-

tion: Whether the core and ancillary claims are so related that they form part of the same case or

controversy." *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 95 (D.D.C. 2020)

(cleaned up) (collecting cases), reconsideration denied *sub nom. Cruz v. Fed. Election Comm'n*,

2020 WL 7699951 (D.D.C. Apr. 24, 2020).

In this case, Plaintiffs' differential-privacy and delay claims indisputably "form part of the

same case or controversy." *Ted Cruz for Senate*, 451 F. Supp. 3d at 95. As discussed previously,

both claims very likely stem from identical defendants doing identical things—that is, Defendants'

decision to implement differential privacy, the illegality of which not only constitutes a harm in

10

itself but also produces the continued delay of redistricting data which further harms Plaintiffs. But even if Plaintiffs' separate causes of action do not stem from precisely the same actions (that is, if the Bureau reveals some other reason for its unlawful six-month delay), Plaintiffs' differential-privacy and delay claims still target the same Defendants' deliberate disregard of their statutory and constitutional mandates regarding the 2020 decennial census. Under supplemental jurisdiction's "case or controversy" requirement, this is more than enough. *See* Wright & Miller, 17A Fed. Prac. & Proc. Juris. § 3567.1 n.34 (3d ed.) ("In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection.") (collecting cases).

This Court should hold that each of Plaintiffs' claims requires a three-judge court under 28 U.S.C. § 2284(a). However, if the Court holds that only Plaintiffs' differential-privacy claims warrant a three-judge court, then the panel should exercise its pendent jurisdiction over Plaintiffs' delay claims, for all of Plaintiffs' claims stem from the same case or controversy: Defendants' deliberate violations of their statutory and constitutional obligations to deliver timely, accurate decennial-census data to the States.

## CONCLUSION

In accordance with 28 U.S.C. 2284(a) and Pub. L. 105-119 § 209(e)(1), this lawsuit requires a three-judge court.

11

Dated: March 10, 2021

STEVE MARSHALL
*Attorney General of Alabama*

/s/ ~~Edu/~~

Edmund G. LaCour Jr. (ASB-9182-U81L)
*Solicitor General*

A. Barrett Bowdre (ASB-2087-K29V)
*Deputy Solicitor General*

James W. Davis (ASB-4063-I58J)
Winfield J. Sinclair (ASB-1750-S81W)
Brenton M. Smith (ASB-1656-X27Q)
*Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Winfield.Sinclair@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

*Counsel for the State of Alabama*

Respectfully submitted,

/s/

Jason B. Torchinsky*
Jonathan P. Lienhard*
Shawn T. Sheehy*
Phillip M. Gordon*

HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY, PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
(540) 341-8808 (Phone)
(540) 341-8809 (Fax)
Jtorchinsky@hvjt.law
Jlienhard@hvjt.law
Ssheehy@hvjt.law
Pgordon@hvjt.law

*pro hac vice* application to be filed

*Counsel for Plaintiffs*

12