# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| THE STATE OF ALABAMA; ROBERT ADERHOLT, Representative for Alabama's 4th Congressional District, in his official and individual capacities; WILLIAM GREEN; and CAMARAN WILLIAMS,<br><br>      Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE; GINA RAIMONDO, in her official capacity as Secretary of Commerce; UNITED STATES BUREAU OF THE CENSUS, an agency within the United States Department of Commerce; and RON JARMIN, in his official capacity as Acting Director of the U.S. Census Bureau,<br><br>      Defendants. | CIVIL ACTION NO.<br>3:21-cv-211-RAH-ECM-KCN<br><br>BRIEF OF *AMICI CURIAE* STATE OF UTAH AND 15 OTHER STATES IN SUPPORT OF PLAINTIFFS |

## INTRODUCTION

  The States of Utah, Alaska, Arkansas, Florida, Kentucky, Louisiana, Maine, Mississippi, Montana, Nebraska, New Mexico, Ohio, Oklahoma, South Carolina, Texas, and West Virginia (*Amici* States) agree with Plaintiffs that the Secretary's intended use of differential privacy deprives states of accurate "[t]abulations of population" of state subparts to use in legislative apportionment and districting under 13 U.S.C. § 141(c). *Amici* States also agree that the Secretary can comply with the privacy requirements of 13 U.S.C. § 9 by alternative methods that do not deprive the states of the numbers to which section 141 entitles them. They submit this *amicus* brief to explain the detrimental effects that using the differential privacy method would have on both redistricting and administering state and federal programs.

45344696 v1

## ARGUMENT

I. **Utah's analysis of the 2010 demonstration data shows that differential privacy will result in inaccurate 2020 subpopulation data affecting redistricting and state and federal program funding.**

In October 2019, the Census Bureau released demonstration data to permit states to review the effects of differential privacy. *See* 2010 Demonstration Data Products, https://www.census.gov/programs-surveys/decennial-census/2020-census/planning-management/2020-census-data-products/2010-demonstration-data-products.html. The demonstration data included the census data from 2010 that was treated with the new differential privacy method. *Id.* Using a mathematical model, the Census Bureau injects "noise"—false information—into the raw data to minimize the risk of privacy disclosure. *Id.* The Utah State Legislature analyzed the 2010 demonstration data, comparing it with the previously received 2010 redistricting data and sent its findings to the Census Bureau. *See* Letter of the Utah State Legislature (Feb. 13, 2020), https://www.ncsl.org/Portals/1/Documents/Redistricting/UT_Differential_Privacy_%28Signed%29.pdf.

The Utah State Legislature identified three major harms from using differential privacy for census data. *Id.* at 1. *First*, it would make accurate redistricting at the local level impossible. The analysis showed that when differential privacy was applied to the 2010 data, there was a statewide net loss of nearly 15,000 people from Utah's cities and towns, including two cities that lost 50% of their populations. *Id.* Indeed, with inaccurate subpopulation data, the State would be unable to accurately receive and distribute funds to localities. Like many states, Utah has state revenue-sharing statutes and receives federal funding based on population formulas derived from census data. Inaccurate data would "impact state and federal funding that is disbursed in compliance with" those statutes and formulas. *Id.* at 1.

*Second*, inaccurate data could "adversely affect longitudinal studies about health, safety and welfare." *Id.* If the academic and professional policy analyses that legislators rely on to inform public policy decisions were based on inaccurate data, the Legislature could no longer rely on them, and would have to essentially legislate in the dark. *Id.* And *third*, because of the population shifts, the Utah Legislature expressed concerns that the State would not be able to fulfill its constitutional obligation to satisfy population and equality requirements in redistricting. *Id.* at 2.

These concerns remained even after the Census Bureau tweaked the data. The Bureau released additional sets of demonstration data in May 2020, September 2020, and November 2020, modifying the amount of injected "noise" with each dataset. *See* https://www.ncsl.org/research/redistricting/differential-privacy-for-census-data-explained.aspx. The Utah Legislature analyzed the November 2020 data in the same way it had analyzed the modified 2010 data. *See* Differential Privacy, Utah State Legislature (March 2021) ("2021 Utah Report") (attached at Exh. 1). While it saw an improvement from the October 2019 to the November 2020 demonstration data, it did not cure the population inaccuracies. For example, Congressional districts three and four had populations increase and decrease by nearly 50 voters, respectively, *id*. at 32—significantly higher than the one-person-one-vote principle requiring states to draw legislative districts that are nearly equivalent in population. *See Evenwel v. Abbott*, 136 S. Ct. 1120, 1123-24 (2016).

As with its analysis of the modified 2010 data, the Utah Legislature's concerns with the November 2020 data went beyond redistricting. The Utah Legislature observed that while the November 2020 data improved, there remained "some significant population changes, particularly in rural municipalities." 2021 Utah Report, Exh. 1 at 1. Specifically, several cities suffered a population decrease of over 30%. *Id.* at 13. And inaccurate data would translate to lost funding for those

communities. For example, in FY2017, Utah received $9 billion from census-guided federal funding. *See* Andrew Reamer, Counting for Dollars 2020: The Role of the Decennial Census in the Geographic Distribution of Federal Funds, Brief 7: Comprehensive Accounting of Census-Guided Federal Spending (FY2017): Part B: State Estimates at 3, https://perma.cc/MUP5-6KJ5. Nationwide, $1.5 trillion was distributed through 316 federal spending programs on 2010 census-derived data. *Id.* at 1. Thus, like Utah, inaccurate subpopulation data will harm distribution of census-guided funding in all states.

II.     **Other states' analyses also recognize the harm differential privacy will inflict on rural areas and minority racial groups.**

Utah is not alone in its concerns about redistricting, funding, and data accuracy. All states use census data to redistrict, obtain and distribute federal funds, and administer many state and local programs. Because differential privacy creates false information—by design—it prevents the states from accessing municipal-level information crucial to performing this essential government functions. And the distorting impact of differential privacy will likely fall hardest on some of the most vulnerable populations—rural areas and minority racial groups. *See* National Conference of State Legislatures, *Differential Privacy for Census Data Explained*, Mar. 15, 2021, available at https://www.ncsl.org/research/redistricting/differential-privacy-for-census-data-explained.aspx.

As one University of Virginia researcher explained in a letter to Governor Northam, skewing minority group data is particularly problematic when a State must accommodate majority-minority districts. *See* Memorandum from Meredith Strohm Gunter to Hon. Ralph Northam, Jan. 23, 2020, available at https://www.ncsl.org/Portals/1/Documents/Redistricting/VA_CensusDistortionProgram_VAGovernor_2020-01-23.pdf. Because the "noise-injected proxy" would change the "actual size of the voting age population in each census block" as well as its racial

characteristics, "[m]ajority-minority districts could lose their status" or a non-minority-majority district might mistakenly have majority-minority status conferred upon it. *Id.*

California's leaders recently sent a letter to the White House Chief of Staff expressing concerns that inaccuracies introduced by differential privacy would "hamper the ability of states and localities to establish political districts that comply with the United States Constitution's 'one-person, one-vote' principle and with the protections of the Voting Rights Act of 1965." Feb. 2021 Letter from California leaders to Ronald Klain, available at https://www.ncsl.org/Portals/1/Documents/Redistricting/California_Differential_Privacy_summary2021.pdf. A joint analysis from Asian Americans Advancing Justice and Mexican American Legal Defense and Educational Fund explained that this would likely lead to minorities being underrepresented. *See* Preliminary Report: Impact of Differential Privacy & the 2020 Census on Latinos, Asian Americans, and Redistricting, available at https://advancingjustice-aajc.org/report/preliminary-report-impact-differential-privacy-2020-census-latinos-asian-americans.

Other states also shared concerns about funding equity for localities and data accuracy. As the Virginia researcher explained, myriad state programs—from housing and transportation to emergency management—rely on accurate data to deliver state services to those who need it. https://www.ncsl.org/Portals/1/Documents/Redistricting/VA_CensusDistortionProgram_VA-Governor_2020-01-23.pdf. And legislators rely on census-derived statistics to calibrate programs for those in need. *Id.*

Two officials from Maine—its state economist and data center lead—expressed similar concerns in a letter to the Census Bureau's director, explaining that their analysis showed that "small, rural places suffer the most" from inaccurate estimates." Feb. 20, 2020 Letter to Steven

Dillingham, available at https://www.ncsl.org/Portals/1/Documents/Redistricting/ME_Letter_to_Census_on_differential_privacy_concerns_Maine_SDC.pdf. Washington State's state demographer wrote a similar letter to the Bureau's director about the outsized impact that rural areas would suffer under differential privacy, saying that the data would be "unusable for large parts of" the state and skew funding away from small towns. Feb. 6, 2020 Letter to Steven Dillingham, https://www.ncsl.org/Portals/1/Documents/Redistricting/WA_OFM_DAS_Response_Letter.pdf. He found the error rate "alarmingly high" and "extremely problematic" for state functions. *Id.* The Colorado General Assembly echoed similar redistricting, funding, and data accuracy concerns to those of other states—though in their analysis, the data skewed in favor of rural areas. *See* June 1, 2020 Letter to Steven Dillingham, available at https://www.ncsl.org/Portals/1/Documents/Elections/CO_State_Legislative_Leadership_Letter.pdf?ver=2020-08-04-132435-780&timestamp=1596569177678.

Finally, demographic researchers from the University of California Riverside and the University of Washington did four case studies using data from Alaska to illustrate just how strange the local-level results of using differential privacy can be. They found that three population blocks included several children and no adults; 1,252 voting blocks switched from having one or more persons of voting age to having no persons of voting age; 830 blocks went the other way, from having no persons of voting age to having at least one; and that 96% of blocks (12,366 of 12,870) with one or more inhabitants showed a different number of persons. Population Association of America, *The Effect of Differential Privacy Disclosure Avoidance System Proposed by the Census Bureau on 2020 Census Products: Four Case Studies of Census Blocks in Alaska*, available at https://www.populationassociation.org/blogs/paa-web1/2021/03/30/the-effect-of-the-differential-privacy-disclosure.

*Amici* States share concerns that the Bureau's proposed use of differential privacy will harm State redistricting, funding, and data collection. This in turn will harm all the States' citizens, but the burden will fall disproportionately on minorities and rural areas. This Court should rule in favor of the Plaintiffs.

Dated:  April 13, 2021						Respectfully submitted,


        */s/ Ryan J. Hebson*
Rik S. Tozzi (TOZ001)
ASB-7144-Z48R
Ryan J. Hebson (HEB003)
ASB-3200-R74H
*Attorneys for Amici States*
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
rtozzi@burr.com
rhebson@burr.com


SEAN D. REYES
*Attorney General of Utah*
MELISSA A. HOLYOAK* (Utah Bar No. 9832)
*Solicitor General*
STATE OF UTAH
OFFICE OF THE ATTORNEY GENERAL
350 N.  State Street, Suite 230
P.O.  Box 142320
Salt Lake City, UT 84114-2320
Telephone: (801) 538-9600
melissaholyoak@agutah.gov
\**pro hac vice* application pending

| | |
|---|---|
| TREG R. TAYLOR<br>ALASKA ATTORNEY GENERAL | DOUGLAS J. PETERSON<br>NEBRASKA ATTORNEY GENERAL |
| LESLIE RUTLEDGE<br>ARKANSAS ATTORNEY GENERAL | HECTOR BALDERAS<br>NEW MEXICO ATTORNEY GENERAL |
| ASHLEY MOODY<br>FLORIDA ATTORNEY GENERAL | DAVE YOST<br>OHIO ATTORNEY GENERAL |
| DANIEL CAMERON<br>KENTUCKY ATTORNEY GENERAL | MIKE HUNTER<br>OKLAHOMA ATTORNEY GENERAL |
| JEFF LANDRY<br>LOUISIANA ATTORNEY GENERAL | ALAN WILSON<br>SOUTH CAROLINA ATTORNEY GENERAL |
| AARON M. FREY<br>MAINE ATTORNEY GENERAL | KEN PAXTON<br>TEXAS ATTORNEY GENERAL |
| LYNN FITCH<br>MISSISSIPPI ATTORNEY GENERAL | PATRICK MORRISEY<br>WEST VIRGINIA ATTORNEY GENERAL |
| AUSTIN KNUDSEN<br>MONTANA ATTORNEY GENERAL | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail on this the 13th day of April, 2021:

STEVE MARSHALL
*Attorney General of Alabama*
Edmund G. LaCour Jr.
*Solicitor General*
A. Barrett Bowdre
*Deputy Solicitor General*
James W. Davis
Winfield J. Sinclair
Brenton M. Smith
*Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, Alabama  36104
Telephone:  (334) 242-7300
Facsimile:  (334) 353-8400
edmund.lacour@alabamaag.gov
barrett.bowdre@alabamaag.gov
jim.davis@alabamaag.gov
winfield.sinclair@alabamaag.gov
brenton.smith@alabamaag.gov

Christopher W. Weller
CAPELL & HOWARD, P.C.
150 South Perry Street
Montgomery, Alabama  36104
Telephone:  (334) 241-8000
Facsimile:  (334) 241-8266
chris.weller@chlaw.com

Jason B. Torchinsky
Jonathan P. Lienhard
Shawn T. Sheehy
Phillip M. Gordon
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY PLLC
15405 John Marshall Hwy
Haymarket, Virginia  20169
Telephone:  (540) 341-8808
Facsimile:  (540) 341-8809
jtorchinsky@hvjt.law
jlienhard@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law

BRIAN M. BOYNTON
*Acting Assistant Attorney General*
ALEXANDER K. HAAS
*Director, Federal Programs Branch*
BRAD P. ROSENBERG
*Assistant Director, Federal Programs Branch*
Zachary A. Avallone
Elliott M. Davis
John Robinson
*Trial Attorneys*
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Telephone:  (202) 616-8489
zachary.a.avallone@usdoj.gov
elliott.m.davis@usdoj.gov
john.j.robinson@usdoj.gov

*/s/ Ryan J. Hebson*
OF COUNSEL

45344696 v1