**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

STATE OF ALABAMA, *et al.*,

   Plaintiffs,

v.

UNITED STATED DEPARTMENT OF COMMERCE, *et al.*,

   Defendants.

Case No. 3:21-cv-211-RAH-ECM-KCN

**DECLARATION OF JAMES WHITEHORNE**

I, James Whitehorne, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.   I am the Chief of the Census Redistricting and Voting Rights Data Office at the U.S. Census Bureau. I have occupied this position since July 2015. Prior to that, I served as the Assistant Chief in the same office from April 2010 until becoming Chief. As Chief of the Census Redistricting and Voting Rights Data Office I am responsible for management of the Census Bureau's redistricting data program and for implementation of 13 U.S.C. § 141(c). I am knowledgeable about the Census Bureau's redistricting data program.

2.   I am making this Declaration in support of Defendants' Opposition to Alabama's preliminary-injunction motion. All statements in this Declaration are based on my personal knowledge or knowledge obtained in the course of my official duties. In this declaration I:

- Provide background on the Census Bureau's redistricting data program;
- Explain the process by which the Census Bureau established September 30, 2021 as the working schedule date by which we would complete delivery of redistricting data, and our reasons for establishing this schedule;
- Explain why it is impossible for the Census Bureau to comply with the statutory deadline set in § 141(c); and
- Explain the likely effect of any order compelling production of redistricting data for Alabama prior to the completion of processing.

**Background on the Redistricting Data Program**

3.   Section 141(c) of the Census Act requires the Secretary of Commerce ("the Secretary") to establish a program allowing States to identify the geographic areas for which specific tabulations of population are desired. Section 141(c) also directs the Secretary to deliver basic tabulations of population, and geographically specific tabulations

1

for those States participating in the program, to the Governor and officers or public bodies having responsibility for legislative apportionment or districting within one year from the decennial census data (which is April 1).

4. The Census Bureau established the program after passage of Public Law 94-171 in 1975, codified at 13 U.S.C. § 141(c). The States generally use redistricting data produced under § 141(c) to redistrict for state and congressional elections, although they are not required to do so by any federal law. The U.S. Department of Justice also uses redistricting data to enforce of the Voting Rights Act.

5. Section 141 requires the Census Bureau to conduct the program in a non-partisan manner. We accomplish this by asking each State to assign a non-partisan liaison or liaisons at the start of the program each decade. The redistricting data program asks that the majority and minority leadership in all chambers of the state legislatures sign off on the individuals they feel can represent the State in a non-partisan manner. The redistricting data program then works with those people (or their successors) for the lifecycle of the program.

6. The redistricting data program (RDP) works to ensure the states are informed about the decennial census and the RDP. We started the 2020 RDP by offering in-person briefings to each state, eventually providing information about the 2020 Census and the 2020 Redistricting Data Program to the 26 states that accepted. We have continued to conduct state briefings when requested. We keep as many states as possible informed through our regular interactions with umbrella organizations such as the National Conference of State Legislatures. We also interact directly with our program liaisons in each state.

7. When the Census Bureau first requested a four-month statutory extension from Congress in April 2020, we called our liaisons in New Jersey and Virginia because those two states require redistricting data prior to our statutory deadline. We also emailed all of our liaisons over the month of May 2020 to try to understand the impact of

that extension request. Some States were able to act on that information, such as New Jersey where voters approved a constitutional amendment that allowed the State to use previous district maps until the new maps are in effect for the 2023 elections. And in California, the state legislature sought and obtained at least a four-month delay of its redistricting deadlines from the California Supreme Court.

8. More recently, we notified all of our liaisons on January 28, 2021 that the redistricting data would be delivered later than July 31, 2021, and we have been providing a direct line of support for the states and our liaisons when they come to us with census-related questions. For example, we worked with the Secretary of State's office in Idaho to help them identify data that will allow them to perform a series of initial draft plans, thereby reducing their workload by 50% when the official data is provided. *See* Webinar, Comments by Jason Hancock, Deputy Secretary of State, Idaho (March 5, 2021).

9. The 2020 Census redistricting data program is being conducted in five phases. The first two phases are the Block Boundary Suggestion Project and the Voting District Project. These two phases were conducted in advance of the decennial census in the years 2015 through 2020 to provide States the opportunity to identify the geographic areas for which specific tabulations of population are desired. The third phase of the program is delivering redistricting data to the states. In the fourth phase, the Census Bureau collects the newly redistricted congressional and state legislative districts created by the States after the Census Bureau delivered the redistricting data. This phase is also used to collect changes every subsequent two years if States redistrict again during the decade. In phase five, the Census Bureau evaluates the previous decade's program, incorporating feedback from the States, and develops an outline for the next decennial's redistricting data program.

10. Currently, the Census Bureau is in phase three, the data delivery phase. We provided the States with geographic support products in January and February of this year. State and local governments use these products in their redistricting efforts. The

products contain newly created 2020 Census blocks and updated block groups, census tracts, voting districts, and current boundaries for legal governments and school districts referenced to January 1, 2020. Using the information that each State provided, we have now delivered the geographic information that will help them plug in the actual 2020 Census data and do their work of redrawing district boundaries.

11. States can use these supplied geographic files now to prepare for redistricting and elections administration. In some states, there is a requirement that incarcerated individuals be reallocated from the correctional institution where they are counted by Census to a pre-incarceration address. With the release of the geographic support products, states can identify the location from and to where these individuals need to be moved. This adjustment can be prepared in advance at the granular census block geography and then those adjustments can be applied to the data upon its release.

12. States, including Alabama, can do the same to prepare voter rolls. The Census Bureau provided both geographic information system (GIS) files and .pdf maps for printing that clearly show every block in every county in every state. Both the GIS files and the .pdf maps include information on roads and other geography. That information can be used now to identify in which census block each voter resides. If the state does not split census blocks when preparing their redistricting plans, as most states do not, then it would be a simple matter to associate those census blocks with the new plans after they are drawn to recreate voter rolls for the new electoral geography. If the state were to split census blocks, then the same association can be made for the majority of blocks kept whole and with minimized rework for those blocks that are split.

13. We are now preparing to deliver the official data, once it has been processed and cleared for publication. This data will be delivered to the States in two methods. The first method is on DVDs and Flash Drives. These physical devices will have an integrated software browsing tool that will allow intuitive browsing of the data. They also contain a custom extraction menu that allows for the extraction of large datasets from the device.

4

Those extractions can then be imported easily into a Geographic Information System or database. The second method is using our data.census.gov webpage. This webpage is a data browsing tool where data users can access many different census datasets, including the redistricting data. It has custom filters that allow the user to filter on those geographic and characteristic data for which they are interested. For example, a State could filter the data and easily identify the number of voting-age residents by race or ethnicity in each and every block within a census tract, county, or even for the entire state. Data users can view, map, and download these datasets once they have set the filters with their choices.

**Impossibility of Complying with the Statutory Deadline**

14.     The Census Bureau has not yet finalized or produced the redistricting data as of the date I sign this declaration, which is past the statutory deadline of March 31, 2021. Based on my knowledge of decennial census data processing, it is not possible under any scenario for the Census Bureau to produce these data at this time or any time in the immediate future, and the Census Bureau would be unable to comply with any such order from the Court. Simply put, it would be a physical impossibility.

15.     As explained in depth by the Assistant Director for Decennial Census Systems and Contracts, Michael Thieme, the Census Bureau must complete a series of interim steps prior to delivering the redistricting data:

- On completion of the initial CUF, we incorporate the Enumeration of Transitory Locations data, and any addresses added late in census data collection into the detailed final version of the CUF, scheduled to be completed by April 19, 2021.

- The Census Edited File (CEF) in the working plan is scheduled to be completed by June 23, 2021. To produce the CEF, the final CUF needs to go through the editing and imputation process which ensures all records have valid values.

- The Microdata Detail File (MDF) in the working plan is scheduled to be completed by July 17, 2021. Census data is protected by Title 13 and cannot be disclosed until Census completes disclosure avoidance processing. The output of those privacy protections is

5

- the MDF. Disclosure avoidance involves a privacy-loss budget based on complex algorithms that requires the entire national set of CEFs as its input. In other words, it is impossible for this step to be completed until CEF data from all states are done processing.

- The tabulation system then uses the MDF to append more detailed geographic information and then generate the tabulated versions of the data in all of their needed formats. These formats include the text-based summary files and the Application Programming Interface format that drive the data.census.gov website. These formatted tabulations are then reviewed by subject matter experts to ensure the tabulations were performed correctly. In the working plan, this review completes on August 13, 2021.

- The final activity is the production, loading, and testing of the actual dissemination materials and system. The materials are DVDs/Flash Drives with custom browsing software to make accessing the data user friendly. This requires another format conversion of the tabulated data. The system is the data.census.gov platform that provides access to the data for the states and the public. These materials need to be created, system loaded, and all reviewed and tested prior to being provided to the states.

16. Each of these interim steps, in order, is required to move to the next. And the processing for each of these interim steps are interrelated, so changing something in one would impact each subsequent step and threaten the success of the overall process. In the working plan, the Census Bureau is scheduled to complete production of redistricting data no later than September 30, 2021.

17. The current working schedule for producing the redistricting data is not set in stone, however. The schedule builds in time to account for multiple reviews on the assumption that anomalies will be discovered and must be corrected prior to publication. Anomalies found in processing are not errors in the census, but they can turn into errors if we don't review and resolve them. In a perfect world where every single step of the processing occurs with no additional anomalies or impediments, it may be possible to deliver redistricting data weeks before September 30. But it has been our experience with

the 2010 Census processing, with the first half of the 2020 Census processing, and with the issues we already know we will encounter in the second half of the 2020 Census processing, that there is little to no chance of encountering this perfect world. This is a dynamic process and the Census Bureau is doing everything in its power to produce high-quality redistricting data as quickly as possible.

**The September Delivery Date**

18. The Census Bureau's original plan was to release the redistricting data in a staggered fashion, releasing a group of states each week between February 18, 2021 and March 31, 2021. But by early 2021 it was clear that the Census Bureau could not meet its statutory deadline for delivering redistricting data to the states. Around the same time, my office received questions from our state liaisons about when we could deliver the data, and we wanted to provide this information to the States so that they could plan for the delay. The Census Bureau therefore sought to establish an achievable schedule for redistricting data that built in sufficient time for review and revision, and produced redistricting data that States could use with confidence.

19. To create the current working schedule, I coordinated with many different components of the Census Bureau about the time each office needed to perform its part of the process. These areas include: Decennial Response Processing System, Decennial Statistical Studies Division, Economic Reimbursable Surveys Division, Production Environment for Administrative Records Staging Integration and Storage, Demographic Directorate, Disclosure Avoidance System, Tabulation System, Center for Enterprise Dissemination Services and Consumer Innovation, Application Development and Services Division, Decennial Census Management Division, and the Census Redistricting and Voting Rights Data Office.

20. Recognizing that processing schedules are a snapshot based on past and current experiences, the working schedule that we created—estimating completion by September 30, 2021—takes into account the Census Bureau's processing experiences thus

7

far (such as the discovery of anomalies) and allows time for subject matter review and reruns of files, if necessary. To the fullest extent possible, it adjusts the sequencing and durations of some operations to achieve efficiencies. For example, the working schedule has allowed us to prepare ancillary files needed for creation of the CEF, while waiting for receipt of the CUF. Originally, these were to be processed after receipt of the CUF. This change allowed us to "save" several weeks in expected processing time.

21. But as discussed above and by Mr. Thieme, this highly complex operation involves iterative and interrelated review cycles to ensure processing is occurring as designed. This is crucially important because the finished CEF becomes the source of all decennial data for the next ten years. After completion and validation of the CEF, it is also essential that the Census Bureau process the country as a nation through the disclosure avoidance process to protect the confidentiality of all census respondents. These two necessities (completion of CEF and privacy protections) in particular push us deep into the planned schedule, well beyond the statutory deadline.

22. In addition, critical decisions are made using the data produced by the Census Bureau for the decade following their publication. The processing work that leads to the redistricting data products ensures the eventual quality of not only the redistricting data but all of the major decennial data releases that are used throughout the decade for public policy, funding formulas, business decisions, and many other uses.

23. To help states and the public plan, on February 12, 2021 the Census Bureau announced the new working schedule and published a blog (available [here](#)) that I had written describing our process and rationale.

24. Originally, we planned a staggered delivery so that we could order states based on their redistricting deadlines, prioritizing states that needed the data sooner. In our efforts to keep the redistricting schedule as short as possible while maintaining the quality of the data, however, we determined that a single national delivery would pro-

vide an overall shorter timeframe than a staggered release. That's because a single national release will enable us to compress several production and review activities. For example, by moving to a single national release, DVD/Flash Drive creation and review went from 37 days to 28 days; review of the tabulated data went from 36 days to 20 days; and the load-and-review process for the data.census.gov data website went from 42 days to 23 days.

25. The single national release will also allow the Census Bureau to ensure the delivery of redistricting data with finality, possibly saving time over a staggered release. When performing data reviews, there may be an error in one State that is not apparent except when viewed in another State or multiple States. These findings act as triggers to perform additional reviews to identify whether it is a systematic error that may require reprocessing of all States' data or if it only affects the State in which it was found. So a single national release allows the Census Bureau to complete the review of all the dissemination materials prior to release, thus reducing the likelihood of finding an error after the data for one State was released that would require us to retract that data, conduct additional processing, and reproduce that State's corrected data much later. Because the Census Bureau will be unable to meet the statutory deadline to provide the redistricting data to the States, and with the urgency of supplying all States their data as soon as possible, it is thus more efficient for all States' data to be reviewed prior to dissemination.

26. The Census Bureau is aware that there are now a number of States, including Alabama, that will have to address statutory or state constitutional issues resulting from our delayed delivery of the redistricting data. Based on the National Conference of State Legislature's webpage titled *2020 Census Delays and the Impact on Redistricting*, at least 27 states have a requirement for redistricting to be completed in 2021 (either explicitly or implicitly). And each state has its own constitutional and statutory requirements, some of which include public meetings, data modification, and other requirements. So,

9

with the delay in the delivery of the redistricting data, there are now too many states (at least 27) to prioritize, in a fair, logical, and data-driven manner.

**Release of Legacy Format Redistricting Data File in August**

27. In recognition of the difficulties the above timeline creates for states with redistricting and election deadlines prior to September 30, the Census Bureau continuously reviews its timeline to identify any opportunities to shorten the processing schedule. Our review confirms that all steps of data processing and formatting will be complete by September 30. However, we recently announced on March 15, 2021, that we expect to be able to provide states with a "legacy" format summary redistricting data file in mid-to-late August. The legacy format summary files will not contain the individual data tables that will be included in the September release, but states can use an outside vendor to process the data if they do not have the capacity to extract individual data tables from the legacy format data on their own. While we had intended to provide the legacy format summary files with the final 2020 Census redistricting data, we determined that states should be given the opportunity to use the legacy format files as soon as they become available in August. The legacy format files will have identical data to the files that we expect to deliver in September. They will have been fully reviewed and subject to the same exacting quality assurance processes. The only drawback to using the legacy format summary files is that they will require additional handling and software to make the data accessible. We expect that many states will elect to use the August delivery because they have used similar products in the past and the vendors who support the states in redistricting are also knowledgeable and able to work with these files.

28. The product and integrated tools we plan to deliver in September—DVD/flash drives and our data.census.gov Data Explorer platform—will have enhancements that make accessing and working with the data more user-friendly. The DVDs and flash drives will have an integrated software browsing tool that will allow intuitive browsing of the data. That software also contains a custom extraction menu that

10

allows for the extraction of large datasets from the device. The data.census.gov Data Explorer platform is a data browsing tool where users can access many different census datasets, including the redistricting data. It has custom filters that allow the user to filter on those geographic and characteristic data in which they are interested. For example, a state could filter the data and easily identify the number of voting-age residents by race or ethnicity in each block within a census tract, county, or even for the entire state. Data users can view, map, and download these datasets once they have set the filters with their choices.

**Prioritization of States**

29. Alabama is not the only state that has sued the Census Bureau seeking earlier delivery for its redistricting data and asking that it be prioritized. If the Census Bureau were to prioritize the DVD/Flash Drive and the data.census.gov webpage for one State's redistricting data (to the detriment of the other 49 states), it would not be able to deliver the data more than a few weeks earlier than a single national release. If the Census Bureau were to prioritize the older, more-complicated file format for one State's redistricting data (to the detriment of the other 49 states), it may be able to deliver that data a few days earlier than other States, at most. As explained above, the Census Bureau cannot produce data for any State until after the disclosure avoidance (privacy protections) have been applied, which requires processing data for all States at once. As a result, even if the Census Bureau prioritized the redistricting data for one State, it could only focus on that State after privacy protections (i.e., disclosure avoidance) are applied, and we would still need to create and review the data tabulations thereafter. However, if one State were prioritized through those reviews, the resulting data may have uncaught errors from being been rushed through review without the benefit of review of all States at once, perhaps ultimately sacrificing both accuracy and time (as discussed above).

30. Prioritizing one state would also divert the use of resources and systems that are needed for the national release and delay the release of data for the other 49 states.

That's because prioritizing one State would mean focusing the Census Bureau's resources on that review and processing, delaying review for all other States. So even if the prioritized one State's data could advance the DVD/Flash Drive and data.census.gov webpage release by several weeks, the same data for the other 49 States would be delayed.

31.   The Census Bureau's working schedule does not contemplate advantaging one State over the other 49. So, the full extent of any additional delays resulting from the prioritization of one State over the other 49 would have to be determined by recreating the working schedule with the one prioritized State ahead of all others. Based on my current knowledge, attempting to prioritize one State may cause an additional delay by as much as several weeks, causing even further disruptions for the remaining 49 States' redistricting processes.

32.   The current situation is understandably frustrating to Alabama, and to the majority of States. As the officer within the Census Bureau charged for advocating on behalf of the States in regard to the redistricting data program, I understand and share their frustration. But dedicated Census Bureau professionals are working as diligently and efficiently as possible to ensure that the data we provide for redistricting are produced as quickly and as accurately as we can accomplish.

33.   I have read the foregoing and it is all true and correct.

DATED and SIGNED:

JAMES WHITEHORNE
Digitally signed by JAMES WHITEHORNE
Date: 2021.04.11 18:49:59 -04'00'
_____

James Whitehorne

Chief, Census Redistricting and Voting Rights Data Office
United States Bureau of the Census