# Exhibit 14

**To:**      Danah Michele Boyd (CENSUS/CED CTR)[danah.m.boyd@census.gov]
**From:**    John Maron Abowd (CENSUS/ADRM FED)[/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=cb0eee1cc6ca45cc948c0077899626c2-Abowd, John]
**Sent:**    Wed 10/7/2020 2:44:44 PM (UTC)
**Subject:** Re: Letter to DSEP committee

OK. Thanks and sorry for the delayed response. This why the Data Quality EGG wants a CNSTAT consensus panel with unfettered access to the raw data. And why I hired Paul Biemer to do a total uncertainty analysis of the 2020 Census. But I don't know how to speed up the work. I agree with Tori's assessment that we should hold everything after the redistricting data until there is consensus that the underlying data are fit-for-use. But there's no way to slow the redistricting long enough to get that. Let's talk. But not today.

Thanks,

**John M. Abowd, PhD**, Associate Director and Chief Scientist
Research and Methodology
U.S. Census Bureau
O: 301-763-5880 M: simuling on cell
census.gov | @uscensusbureau
**Shape your future. START HERE >** 2020census.gov

**From:** Danah Michele Boyd (CENSUS/CED CTR) <danah.m.boyd@census.gov>
**Sent:** Monday, October 5, 2020 4:47 PM
**To:** John Maron Abowd (CENSUS/ADRM FED) <john.maron.abowd@census.gov>
**Subject:** Re: Letter to DSEP committee

The way that I read this letter echoes what I've been hearing from other stakeholders. Q1, which is rooting all other questions right now, is: Will decennial data (as in the CEF) be fit-for-use? The Census Bureau is likely to say yes, but will data users have confidence in that vocalization? Data users want to be able to verify that assertion. In the last, they used the published data to get a sense for whether there were problems because they felt as though, even with swapping or other disclosure avoidance components, they could detect fundamental errors in field operations through the published data.

While concerns about underlying data are not new, they are unquestionably higher because of COVID. So data users want to understand if they'll even know where the problems might be.

This then factors into the DAS. Q2: Will identified problems be rooted in the DAS or the CEF (aka decennial and field)? No one has the foggiest clue how to disentangle those two components on the outside.

Given the high level of uncertainty about the factors that are influencing the data in the CEF and the expectation that there will be challenges to the CEF, more folks are asking for the DAS to take a backseat. This poses a fundamental question for you: How can the CEF data be meaningfully audited/verified such that external stakeholders have confidence in the CEF (or understand its limitations) even if they cannot directly access/analyze it? As long as these two facets are entangled, the DAS will take the blame for any problems in the 2020 census data because it's what the public has access to. (I am dreading public comments like "the best census ever!" from Bureau officials because these will be the hook.)

In terms of how to respond, I would probably break down the puzzle being articulated so that he knows you're hearing him. He's looking for the data to be validate-able, for it to not cause XYZ ripple effects, for errors in the DAS to be discernable. And then talk through approaches for achieving those goals AND ensuring T13 compliance. "You have to trust us" ain't gonna work.

Happy to talk through this cuz I think this is deeper than the DAS. The DAS is the tip of the data quality iceberg. This census is triggering deep epistemological questions: how do we know what we know? And that's the funny thing about methodological transparency - most folks don't feel reassured by understanding how knowledge is produced; only scientists do. This is why there's a long history of data being *performed*. By trying to explain, you built a lightning rod.

But the DAS isn't the metal at the base - it's just the rod. And there's nothing that's grounding that rod right now. The big question is whether or not that rod can be grounded.

Let me know if you want to strategize.

**danah boyd**, Research Contractor
Research and Methodology
U.S. Census Bureau
M: 202.860.4551

census.gov | @uscensusbureau
**Shape your future. START HERE >** 2020census.gov

---

**From:** John Maron Abowd (CENSUS/ADRM FED) <john.maron.abowd@census.gov>
**Sent:** Monday, October 5, 2020 2:30 PM
**To:** Danah Michele Boyd (CENSUS/CED CTR) <danah.m.boyd@census.gov>
**Subject:** Fw: Letter to DSEP committee

Suggestions welcome. He is typical of FSCPE. Thanks,

**John M. Abowd, PhD**, Associate Director and Chief Scientist
Research and Methodology
U.S. Census Bureau
O: 301-763-5880 M: simuling on cell
census.gov | @uscensusbureau
**Shape your future. START HERE >** 2020census.gov

---

**From:** Jan Kasper Vink <jkv3@cornell.edu>
**Sent:** Monday, October 5, 2020 2:23 PM
**To:** Census 2020 DAS <2020das@census.gov>
**Cc:** Victoria Velkoff (CENSUS/ADDP FED) <Victoria.A.Velkoff@census.gov>; Cynthia Davis Hollingsworth (CENSUS/DCMD FED) <cynthia.davis.hollingsworth@census.gov>; John Maron Abowd (CENSUS/ADRM FED) <john.maron.abowd@census.gov>
**Subject:** Letter to DSEP committee

It is my understanding that later this week the DSEP committee will discuss development and invariants of the Disclosure Avoidance System.

I have deep concerns about the TDA system that is currently in development and hope that attached document with these concerns finds its way to the members of the DSEP committee for consideration.

With best regards,

Jan Vink
Extension Associate
Cornell Program on Applied Demographics
Web: https://pad.human.cornell.edu, Twitter: @PADCornell
Tel: (607) 255 8399