UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF ALABAMA, *et al.*<br><br>　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>　　　　Defendants. | No. 3:21–cv–00211–RAH–ECM–KCN |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO INTRODUCE SUPPLEMENTAL EVIDENCE IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

On April 19, 2021, the Court set a deadline for the parties to file any supplemental evidence by April 26, 2021. *See* Order, Doc. 93. Now, three weeks after that deadline and two weeks after the hearing on Plaintiffs' motion for a preliminary injunction, Plaintiffs seek to file a supplemental declaration purporting to analyze the racial characteristics reflected in the Census Bureau's latest release of demonstration data. Plaintiffs' proposed declaration is not only untimely, but, as explained below, ultimately irrelevant to any of the issues before the Court. The declaration has no bearing on their claim under 13 U.S.C. § 141(c) because—as Plaintiffs have admitted—§ 141(c) pertains only to tabulations of population, not the *characteristics* (like race) of those populations. Moreover, the declaration cannot support Plaintiffs' APA claim because it is not relevant to any final agency action this Court might assess. If the Court considers any of the Census Bureau's *prior* announcements about differential privacy to be final agency action, then both the declaration and the data it analyzes would postdate any such action and could not be part of the administrative record. And if the Court considers the Census Bureau's *future* implementation of differential privacy to be final agency action, then the declaration cannot be relevant because the agency has not yet made the decision that Plaintiffs would purport to challenge. Accordingly, Plaintiffs have not demonstrated good cause for introducing an untimely declaration, and their motion should be denied.

## ARGUMENT

As an initial matter, the Court should deny Plaintiffs' motion because it seeks to introduce new and untested evidence three weeks after the Court's April 26 deadline for supplemental evidence. The Census Bureau announced in February of this year that it would be releasing another set of demonstration data in late April. *See* Doc. 127-1. Thus, Plaintiffs were aware when they filed suit in March that the Bureau would be releasing new demonstration data in late April. Plaintiffs could have waited to file suit, but rather

than waiting to see how the demonstration data might affect their claims, Plaintiffs decided to bring suit on March 10 and requested a hearing on their motion for a preliminary injunction as soon as possible.

In light of the timing of Plaintiffs' suit, the parties necessarily restricted their briefing on Plaintiffs' preliminary injunction motion to the record that existed at the time, including the Bureau's prior releases of demonstration data and declarations from Plaintiffs' experts analyzing that earlier data.  If Plaintiffs wished to rely on the April data to support their motion for preliminary relief, they should have waited to file suit until the April data came out.  At the very least, in seeking a hearing at the earliest possible date, Plaintiffs should have apprised the Court that they planned to rely on the April data.  But now that the April 26 deadline for supplemental evidence has passed and the Court has heard argument from the parties, it is not appropriate for Plaintiffs to seek to reopen the record and introduce new evidence.

Nor have Plaintiffs demonstrated good cause for supplementing the record with an untimely declaration.  *See* Fed. R. Civ. P. 6(b)(1) (court may allow untimely filings "for good cause").  The proposed declaration states that Plaintiffs' purported expert, Thomas M. Bryan, reviewed the demonstration data as it relates to Alabama's 105 House of Representatives districts to "investigate any districts that may have changed from being a Black-majority-minority district to simply a Black minority district."  Doc. 129-1, at 1.  According to his declaration, Mr. Bryan concluded that for 1 of the 105 districts, the Black Voting Age Population (BVAP) went from 50.01% in the Bureau's 2010 summary file to 49.87% in the April 2021 demonstration data file, a difference of 0.14%.  Plaintiffs note that " this may not seem like a significant change," but go on to claim that this change "has large ramifications for the rights of African American voters residing in and around that district."  Doc. 129 at 2.  And Plaintiffs argue that "[s]ection 141(c) exists to prevent this exact type of situation."  *Id.* at 3.

2

But the injection of uncertainty into *characteristic* data (such as sex, race, ethnicity, age, and voting age)—whether through data-swapping or the differential-privacy algorithm—has no bearing on § 141(c), which merely obligates the Secretary of Commerce to provide "tabulations of *population*." 13 U.S.C. § 141(c) (emphasis added). Indeed, at the May 3, 2021, hearing on Plaintiffs' preliminary-injunction motion, Plaintiffs unequivocally affirmed that data-swapping's injection of error into the characteristic data has no bearing on § 141(c) because—as Plaintiffs explained to the Court—"Congress said tabulations of population, not tabulations of population by race or tabulations of population by ethnicity or age." May 3 Hr'g Tr. at 21:5–22; *cf. id.* at 61:19–25.

Because § 141(c) does not obligate the Secretary to disclose characteristic data, Plaintiffs acknowledged that Defendants "do have a lot of discretion when it comes to the characteristics." *Id.* at 22:2–3. And Plaintiffs made clear that "if block-level population numbers are invariant," they "would not have a 141(c) cause of action, because" in their view, Defendants "would not be violating [§ 141(c)] at that point" as Defendants "would be providing tabulations of population at all of the pre-agreed upon substate geographies." *Id.* at 35:18–24. Plaintiffs themselves have thus acknowledged that the injection of uncertainty into *characteristic* data has no bearing on their § 141(c) claim, so Mr. Bryan's conclusion that the differential-privacy algorithm reduced the BVAP population as a percentage of total VAP by 0.14% in one state legislative district in the latest release of demonstration data is irrelevant and immaterial to Plaintiffs' § 141(c) claim.

Instead, Plaintiffs have argued that the differential-privacy algorithm's injection of uncertainly into the characteristic data is somehow relevant to their arbitrary-and-capricious Administrative Procedure Act claim. *See, e.g.*, May 3 Hr'g Tr. at 22:3–5 ("[Defendants] do have a lot of discretion when it comes to the characteristics. But at the same time, they still can't do something that's arbitrary and capricious."); *id.* at 35:18–24 (arguing that "if block-level population numbers are held invariant," Plaintiffs "would not

3

have a 141(c) cause of action . . . [b]ut I think we would still have an arbitrary and capricious argument"). But, again, the proffered new evidence is irrelevant to this claim. In their Complaint and opening brief, Plaintiffs brought an APA claim challenging the 2017 and 2018 announcements of the use of differential privacy as supposed "final agency action." *See* Compl. ¶¶ 79–80, 212; Pls. Mot. 39, Doc. 3.[1] Even assuming *arguendo* that the 2017 or 2018 announcements could constitute "final agency action" within the meaning of the APA, *but see* Opp. 49–54, Doc. 41, review of those announcements would be based on the record as it existed at the time the announcements were made in 2017 and 2018, and not releases of demonstration data in 2021. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [the arbitrary-and-capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

Finally, to the extent Plaintiffs seek to challenge the Census Bureau's *future* final implementation of differential privacy on arbitrary-and-capricious grounds, that claim is

---

[1] In their reply, Plaintiffs for the first time argued that the Census Bureau's Data Stewardship Executive Policy Committee's ("DSEP's") November 2020 decision not to hold substate population counts invariant also constitutes "final agency action." *See* Reply 47, Doc. 94; May 3 Hr'g Tr. 39:24–40:8. But "[i]t is well-established that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). And this principle applies doubly to an attempt to amend a complaint in a reply brief. *See, e.g.*, *Thomas v. Auto-Owners Ins. Co.*, 479 F. Supp. 3d 1218, 1231 n.9 (M.D. Ala. 2020) (Huffaker, J.) ("[A]rguments made for the first time in a reply brief are not properly before the Court"). But even if Plaintiffs had properly challenged that decision in their complaint, the proposed declaration (which addresses only race data) would not be relevant to assessing the reasonableness of the November 2020 decision, which concerned only substate *population* totals. In all events, the November 2020 DSEP decision does not constitute agency action, let alone final agency action. *See* Opp. 49–54, Doc. 41; *see generally Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.'").

4

not yet ripe under the APA because final agency action has not yet occurred, as Defendants have explained. *See* 5 U.S.C. § 704; *Franklin v. Massachusetts*, 505 U.S. 788, 799–800 (1992); Opp. 52–53; Defs. Resp. to Pls. RFA 12. Doc. 94-12 at 7 ("the Census has not finalized the specific algorithm and other critical details about how it will apply Differential Privacy to the Redistricting Data"). Plaintiffs' attempt to introduce new evidence about the Bureau's ongoing process to decide how to implement differential privacy only underscores that lack of finality. And even if such a claim were ripe, arbitrary-and-capricious review simply entails ensuring that the agency "has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 114 S. Ct. 1150, 1158 (2021); *see* Opp. 56. The Census Bureau is considering the relevant issues related to the April 2021 demonstration data *now*, and has encouraged data users to provide feedback to the Bureau by May 28.[2] Plaintiffs cannot rely on their proposed declaration to support a claim that the Secretary *will not* adequately consider issues related to a decision that is currently under review and has yet to be made. Of course, the notion that the implementation of the differential-privacy algorithm will inject some uncertainty into the characteristic data (just as data-swapping did in earlier releases of decennial census data) will not be lost on the Secretary.

In all events, Defendants appreciate and will consider Plaintiffs' feedback, much as they appreciate and will consider all stakeholder feedback. But, insofar as Plaintiffs seek to use Mr. Bryan's supplemental declaration in this litigation, the declaration does nothing to support Plaintiffs' APA claims. Mr. Bryan uses the "published 2010 SF dataset" as his pre-differential-privacy comparator, Doc. 129-1 at 1, but that dataset was subject to the Bureau's 2010 data-swapping methodology. Mr. Bryan does not know, and

---

[2] *See* U.S. Census Bureau, Developing the DAS: Demonstration Data and Progress Metrics, https://www.census.gov/programs-surveys/decennial-census/decade/2020/planning-management/process/disclosure-avoidance/2020-das-development.html (last accessed May 18, 2021).

5

thus cannot opine on, whether the *pre-swapped* characteristic data that underlie District 32 would reflect a Black non-Hispanic majority-minority district because the pre-swapped data have never been publicly released. For all Plaintiffs know, District 32, which was drawn from the *post-swapped* 2010 data to have a BVAP of 50.01% of total VAP, could have, based on the confidential *pre-swapped* 2010 data, a BVAP of less than 50% of the total VAP. Indeed, if swapping resulted in even just *three* voting-age African Americans being swapped into District 32 in the post-swapped 2010 data, then the pre-swapped 2010 data would have had a BVAP of less than 50% of total VAP.[3] *See* May 3 Hr'g Tr. at 103:13-24 (Plaintiffs' acknowledgment that the Bureau's data-swapping methodology could swap characteristic data across district lines). Mr. Bryan does not rule out the possibility that, if District 32 had been drawn with the same lines, but based on the pre-swapped data, it might not reflect a Black non-Hispanic majority-minority district. And certainly Mr. Bryan does not opine that it would be impossible to draw a Black non-Hispanic majority-minority district from the latest release of demonstration data.

For these reasons, the proposed declaration is not relevant to any issue before the Court on Plaintiffs' motion for a preliminary injunction.

## CONCLUSION

Plaintiffs' motion to introduce supplemental evidence in support of their motion for preliminary injunction should be denied.

---

[3] The 2010 post-swapped data for District 32 reflected a BVAP of 17,750, or 50.01% of the Total VAP of 35,496. But if the pre-swapped data had a BVAP of 17,747, the BVAP in the pre-swapped 2010 data would have made up less than 50% of the Total VAP.

6

DATED: May 21, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

/s/ John Robinson
ZACHARY A. AVALLONE
ELLIOTT M. DAVIS
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, DC  20005
Phone:  (202) 616-8489
E-mail:  john.j.robinson@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I filed with the Court and served on opposing counsel through the CM/ECF system the foregoing document.

DATED: May 21, 2021

/s/ John Robinson
JOHN ROBINSON (D.C. Bar No. 1044072)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Phone:  (202) 616-8489
E-mail:  john.j.robinson@usdoj.gov

*Counsel for Defendants*