UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF ALABAMA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 3:21–cv–00211–RAH–ECM–KCN |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THOMAS BRYAN'S SUPPLEMENTAL REPORT

Last month, in opposition to Plaintiffs' May 17, 2021, attempt to introduce "supplemental evidence" relating to the Census Bureau's ongoing tuning of the differential-privacy algorithm, *see* Pl. Mot., Doc. 129, Defendants explained that Plaintiffs' supposed "evidence" was not only untimely, but also had no bearing on any of Plaintiffs' legal claims. *See generally* Def. Opp., Doc. 132.

Plaintiffs now seek to introduce further new information that suffers from those same flaws. They ask to "supplement" their putative expert Thomas Bryan's May 14, 2021, letter—which opined that the April 2021 demonstration data decreased the Black, non-Hispanic Voting Age Population of a single extant Alabama legislative district by 0.14%, *see* Doc. 129–1—with a May 28, 2021, non-peer-reviewed working paper from a group affiliated with Harvard University (the "Kenny Paper")[1] that purports to analyze the April 2021 demonstration data in the context of simulated districts in six States, none of which is Alabama. *See* Doc. 134–2 at 3, 4, Table 1. Mr. Bryan argues that he would

---

[1] The lead author of the working paper is Ph.D.-candidate Christopher T. Kenny.

have included or cited to the Kenny Paper had it "been available when [he] submitted . . . [his] supplemental report," Bryan Supp. Decl., Doc. 134–1, ¶ 6, and Plaintiffs thus "request that the Court also allow Plaintiffs to submit this new paper as an appendix to Bryan's supplemental report." Pl. Mot., Doc. 134, at 1.  As with Plaintiffs' last motion, Plaintiffs' new filing is also untimely and irrelevant for the reasons previously explained. *See generally* Def. Opp., Doc. 132.  And in addition, the Kenny Paper—which based its analysis on *simulated* redistricting datasets in Pennsylvania, Louisiana, North Carolina, South Carolina, Mississippi, and New York, *see* Doc. 134–2, at 2–4—has no bearing on Mr. Bryan's May 14 opinion, which narrowly concerned a single, non-simulated legislative district in Alabama.

In all events, the Kenny Paper is just one data point in the broader, ongoing debate among scientists, statisticians, data users, and other stakeholders regarding the technical parameters involved in the future implementation of the differential-privacy algorithm. And that debate has produced a host of different opinions.  For example, scholars affiliated with Princeton University's Electoral Innovation Lab have noted "four major problems that cast doubt on the [Kenny Paper's] conclusions" and conclude that the Kenny Paper's "dramatic claims . . . about functional consequences of disclosure avoidance should be regarded with skepticism, at least until the work has passed peer review." Ex. A, Sam Wang & Ari Goldbloom-Helzner, "Comment on 'The Impact of the U.S. Census Disclosure Avoidance System on Redistricting and Voting Rights Analysis,' by Kenny et al." at 1, 6 (June 2, 2021), https://gerrymander.princeton.edu/DAS-evaluation-Kenny-response (last visited June 3, 2021).

Similarly, a consortium of computer-science professors affiliated with Harvard and other universities and privacy experts at Google have stated that the Kenny Paper "makes a common but serious mistake, from which the authors wrongfully conclude the Census Bureau should not modernize its privacy-protection technology." Ex. B, Mark Bun et al., "Statistical Inference is Not a Privacy Violation" at 1 (June 3, 2021),

https://perma.cc/Y75C-J649. "Not only do the results not support this conclusion, but they instead show the power of the methodology, known as differential privacy, adopted by the Bureau, precisely the opposite of the authors' erroneous conclusions." *Id.*

And scholars affiliated with Boston University and Tufts University found "reassuring evidence that [the differential-privacy algorithm] will not threaten the ability to produce districts with tolerable population balance or to detect signals of racial polarization for Voting Rights Act enforcement." Ex. C, Aloni Cohen et al., "Census TopDown: The Impacts of Differential Privacy of Redistricting" at 1 (2021), https://perma.cc/5AX8-BSJS.

The Census Bureau will consider the Kenny Paper along with all other stakeholder feedback. But like that other stakeholder feedback, the Kenny Paper is at most relevant to a *future* decision. And this Court has no legal basis to wade into—let alone cut short and resolve—the ongoing technical public-policy debate surrounding the future implementation of the differential-privacy algorithm. Moreover, even assuming *arguendo* that a future decision setting the parameters of the differential-privacy algorithm could constitute agency action that might be challengeable in some future lawsuit, *but cf.* Def. Opp., Doc. 41, at 49–53, "[i]t is not for [federal courts] to ask whether" that decision will be "'the best one possible' or even whether it [will be] 'better than the alternatives.'" *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2571 (2019). Rather, even if the Administrative Procedure Act could apply here, the agency is simply "required to consider the evidence and give reasons for [its] chosen course of action." *Id.* And federal courts may not "second-guess[]" such agency decisions or otherwise "substitute[] [their] judgment for that of the agency." *Id.* Indeed, as Defendants have explained, *see* Def. Opp., Doc. 41, at 56, the Eleventh Circuit "believe[s] it appropriate to give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise." *Nat'l Mining Ass'n v. Sec'y, U.S. Dep't of Labor*, 812 F.3d 843, 866 (11th Cir. 2016); *see also, e.g., Islam v. Sec'y, Dep't of Homeland Sec.*, -- F. 3d --, 2021 WL 2020284, at *9 (11th Cir. May 20, 2021)

("Our role 'is to ensure that the agency came to a rational conclusion, not to conduct our own investigation and substitute our own judgment for the administrative agency's decision.'") (alteration marks omitted).

This principle is doubly appropriate in the present context, given the "broad authority" over the decennial census that Congress has delegated to the Executive Branch. *Wisconsin v. City of New York*, 517 U.S. 1, 19 (1996). "And there's one branch Congress has not delegated any census decisions to: the judiciary." *Nat'l Urban League v. Ross*, 977 F.3d 698, 704 (9th Cir. 2020) (Bumatay, J., dissenting from denial of administrative stay), *stay granted*, 141 S. Ct. 18 (2020).

Plaintiffs' motion to supplement Mr. Bryan's supplemental report should be denied.

DATED: June 3, 2021
Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

/s/ Elliott M. Davis
ZACHARY A. AVALLONE
ELLIOTT M. DAVIS (N.Y. Reg. No. 4596755)
JOHN ROBINSON
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, DC  20005
Phone:  (202) 514-4336
E-mail:  elliott.m.davis@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, I filed with the Court and served on opposing counsel through the CM/ECF system the foregoing document.

DATED: June 3, 2021  /s/ Elliott M. Davis
ELLIOTT M. DAVIS (NY Reg. No. 4596755)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Phone: (202) 514-4336
E-mail: elliott.m.davis@usdoj.gov

*Counsel for Defendants*