IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF ALABAMA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.                                  ) | Case No. 3:21-cv-211-RAH-ECM-KCN |
| ) | (WO) |
| UNITED STATES DEPARTMENT ) | |
| OF COMMERCE, *et al.*,           ) | |
| ) | |
| Defendants.               ) | |

**<u>MEMORANDUM OPINION</u>**

NEWSOM, Circuit Judge, concurring:

I concur in the court's judgment and join its opinion in full. I write separately only to underscore an aspect of this case that has troubled me from the outset—namely, the way that Plaintiffs' explanation of their own challenge morphed during the course of the litigation, seemingly as a means of parrying procedural obstacles.

Initially, and presumably in an effort to (p)rebut any argument that their differential-privacy claim failed the APA's "final agency action" requirement on account of the fact that they had filed suit before the Census Bureau released its final statistics, or even set the final privacy-loss budget, Plaintiffs insisted in their motion that they were bringing what amounted to a per se, facial challenge to the use of differential privacy. So, for instance, they said that "differential privacy—*no matter where the epsilon value is set*—inhibits a State's right to draw fair lines." (Doc. 3. at 18 (emphasis added)). Doubling down, Plaintiffs reiterated that "[b]y definition, *any application of differential privacy* will

1

produce erroneous numbers." (*Id*. at 35 (emphasis added)). And then tripling down, as if to remove any doubt: "To be sure, the Bureau has yet to set the privacy loss budget it will use—that decision is still in the works. But the privacy loss budget—the epsilon—is immaterial. Plaintiffs claim that the application of differential privacy itself—no matter the epsilon—is unlawful. That decision is ripe for review." (*Id.* at 40).

Fine, Defendants responded in their answering brief, but "[t]hat decision"—*i.e.*, to employ what Plaintiffs claimed to be an inherently flawed methodology, without respect to the particulars of its implementation—was announced in September 2017 and put into the operational plan in December 2018. That meant, Defendants contended, that Plaintiffs' claim was (in Plaintiffs' words) "ripe for review" in December 2018 at the very latest. And yet, Defendants continued, Plaintiffs had inexplicably (and inexcusably) waited until March 2021 to file suit and seek preliminary injunctive relief. (Doc. 41 at 61).

Faced with this "too late" argument—which Defendants framed in "laches" terms—Plaintiffs pivoted, dramatically. Despite their earlier insistence that their challenge was to "any application" of differential privacy—wholly without regard to the privacy-loss budget, which they dubbed "immaterial"—Plaintiffs emphasized in their reply that their suit was timely precisely because, they said, "[i]t did not become apparent that the Bureau's application of differential privacy would abridge Plaintiffs' rights under § 141(c) until November 24, 2020, when the Data Stewardship Executive Policy Committee set the invariants"—and thereby signaled the census data that would be subject to the privacy-loss budget. (Doc. 94 at 47). That, as I hope is apparent, is a 180° reversal of Plaintiffs' initial position.

\* \* \*

In short: In their complaint and motion, and I think to ward off any ripeness- or final-agency-action-based rejoinder, Plaintiffs insisted that theirs was a per se challenge to the use of differential-privacy—the specifics of its implementation meant *nothing*. Then, in reply, recognizing that their original framing had boomeranged back around on them in the form of a timeliness objection, Plaintiffs insisted that differential-privacy's implementation meant *everything*. Plaintiffs can't have it both ways. And, for me at least, pinning down their shapeshifting claim has contributed to the difficulty of resolving their motion.

          /s/ Kevin C. Newsom
KEVIN C. NEWSOM
UNITED STATES CIRCUIT JUDGE